## WEED and COTTON *vs.* CASE.

Where a person asserts a falsehood with a fraudulent design, and damage results therefrom, though he may have no interest even in the deception, it is good ground for a civil action. Intentional and purposed deception is consequently the very gist of an action against a vendor, for deceit in the sale of property; and this must in some way be made to appear, or no legal claim for damages is laid.

If a vendor has knowledge of the character and condition of the property he is selling, and makes a representation respecting it which turns out to be false, the motive with which that representation is made is all important, when he is sought to be made responsible on the ground that he perpetrated a fraud; and the fact whether he really believed, or had any justifiable rea-

Weed *v.* Case.

son for believing, that what he said was true, is a most legitimate subject of investigation; and in that, as in all those cases of imputed fraud where the motive is the subject of inquiry, the party charged with the fraudulent intent is permitted to be heard.

In order to maintain an action for deceit by means of false representations, it is always necessary to aver and prove an intent to deceive; and whenever a party actually believes what he asserts to be true, he is not liable, although it turns out that what he affirmed was false in fact.

Thus, where, in an action by the purchasers, against the vendor, to recover damages for deceit in the sale of a canal boat, the judge refused to instruct the jury that if they found that the defendant really believed that the representations made by him, in regard to the boat, were true, their verdict should be for the defendant; *it was held* that the judge erred in refusing the instruction asked for.

The case of *Bennett* v. *Judson* (21 *N. Y. Rep.* 238) has always been considered to have carried the doctrine of liability for an alleged fraudulent representation to the extremest verge of the law; and the courts have been very careful to discriminate and apply it only to the state of facts presented by the case itself. *Per* BACON, P. J.

MOTION by the defendant for a new trial on a case and exceptions.

The action was for deceit in the sale of a canal boat. The complaint alleged that on the 16th March, 1867, at Fulton, in the county of Oswego, the defendant, intending to deceive and defraud the plaintiffs, and encourage them to buy of him the canal boat "Solon F. Case," then lying at or near the city of New York, for the price of $4230, falsely and fraudulently represented that said boat was a quarter deck lake boat with hatches, right in every respect, built in the summer of 1866, of the best material and seasoned timber and lumber, and of the very best workmanship. That the plaintiffs, confiding in such representations, purchased the boat and paid therefor the sum aforesaid. That said representations were false, and that the defendant knew them to be so. The answer contained a general denial, and also a second defense, in which the defendant admitted the sale of the boat, as alleged in the complaint, but denied any intent to deceive or defraud, and denied making any false or fraudulent representations

as to the quality or condition of the boat, the materials used, or the time when the boat was built. The defendant admitted that he represented that the boat was a quarter deck lake boat, summer built, constructed of good materials and well built, and averred that he informed the plaintiff Weed, at the time of the sale, when and by whom the boat was built, and of all the material facts in relation to her construction, and that the statements and representations made by him were believed by him to be true, and were in fact true. The action was tried at the Oswego circuit, in May, 1868, before Justice MULLIN and a jury.

The plaintiffs testified, in substance, that the defendant stated to them that the boat was a very nice one, built of seasoned timber, and for his own use. That she was summer built, and worth from $300 to $500 more than if she had been built in the winter. That she was built upon honor by Mr. Warner, a boat builder of Fulton, who built an extra boat because the defendant assisted him with money when he was in need of such assistance. That the cabin was very nice, and that she was well finished for grain or lumber, and he did not think there was a better boat on the canal. That she had flat hatches.

Lewis Sharp, a witness for the plaintiffs, testified that he was present at the nogotiation, and that the defendant said the boat was a good boat, well built, of good materials, summer built and well finished, except one coat of paint, and that he had paid Warner for that. This witness also testified that he knew what kind of hatches the boat had, and that he told the plaintiffs he thought she was a good boat.

Both plaintiffs testified that they had not seen the boat at the time of the purchase, and knew nothing in respect to her. They also testified that her hatches were not flat, but were roof hatches. The plaintiff Weed testified that he first saw the boat in Troy, about 10th May, and took

her to Oswego with a load of coal; that when he got to Oswego, the seams in her deck were so open that they leaked badly; that her lining was not caulked, and that she was finished up very cheap and plain throughout. The plaintiff Cotton testified that he discovered from the leaking of the decks that they must have been put on in bad weather; that her harpings were only inch and one half or two inch plank nailed with spike; that her lining was not caulked; that she was cheaply built; that her cabins were put up with inch stuff, when it should have been inch and a quarter; that it would cost $75 to change her hatches from roof to flat. Sharp testified that he found the boat cheaply built, and of not very good material; that he could pull oakum from the seams around her bow; that her seams were two large for seasoned timber, and that she was worth $800 less than she would have been if summer built. The plaintiffs' witnesses varied in their estimates of the damages, from $500 to $1000, and one put them at $200. The boat was represented to be a quarter deck lake boat, and it was not disputed that she was such. Her hatches were not flat, but were roof hatches, and the defendant testified that he so informed the plaintiffs at the time of the sale.

The defendant also testified that he told the plaintiffs that she was summer built, and that she had made one trip to New York, with a load of peas, where she then was. That Warner agreed to build him a good boat, and he supposed he had done so. He also testified that he saw the boat frequently during the process of construction; that he made a general examination of the timber which went into her; that none but good timber, and that thoroughly seasoned, was used, to his knowledge; that as far as he could see, the workmanship was good; that she was launched in November; that he examined her after she was launched, and found her in good condition; thought her a well built boat; found nothing out of the

way with her bow stem, harpings or lining, and considered her timbers sufficient for a first class quarter deck lake boat. He testified that the boat was built for his own use, and he thought her as good a boat as was ever built in Warner's yard. Joel B. Warner, a boat builder of forty years' experience, testified that he built the boat for the defendant, in the summer of 1866; that she was launched in November; that all of the materials used in her construction were of the first quality, and were mostly seasoned; that he had the personal supervision of the building of the boat; that her timbers, including her harpings, were of the size and kind usually put into first class quarter deck lake boats; that her bow and stem were well fastened; the lining he called a little extra, being of first quality of pine; the ceiling was two inches in thickness, and was caulked wherever it would leak grain; the workmanship was of the first quality, and she was finished as boats of her class usually are. John W. Pratt, proprietor of another boat yard at Fulton, and a boat builder of over thirty years' experience, testified that he was in Warner's yard several times while this boat was being built, and examined her; that the timber was of good quality and of the usual size; saw no fault in the workmanship, and thought she was well put together. That the harpings are generally of two inch plank, but frequently thinner plank is used, in order that they may be sprung in without breaking. That a boat is called "summer built" when the timber is got out and set up in the summer, though she may not be finished and launched until near the close of navigation in the fall. He also testified that, prior to the spring of 1867, there had never been a better boat of her class than this manufactured in Fulton. Several other witnesses were called, whose testimony tended to substantiate that of Warner as to the quality of the boat.

The court, among other things, charged the jury that,

Weed *v.* Case.

"in an indictment the criminal intent must be proved, but in this proceeding it is not essential. It is enough that you are satisfied that the representations were made in regard to the material qualities, and that they were untrue at the time, [and] whether they were known to be untrue to the defendant or not, is not material." To this portion of the charge the defendant's counsel excepted, and requested his honor to charge, that "if the jury find that the defendant really believed that the representations made by him in regard to the boat were true, their verdict should be for the defendant." His honor refused so to charge, and to such refusal the defendant's counsel excepted.

The jury found a verdict in favor of the plaintiffs for $500.

*R. H. Tyler,* for the plaintiffs. I. There is no question raised as to the facts. It is to be presumed that the evidence really taken sustains the verdict. Neither is there any question now before the court on the pleadings, or the admission of evidence. If, therefore, the judge at the circuit did not err in his charge to the jury in the respects excepted to by the defendant, the motion for a new trial must be denied, and the plaintiffs have judgment on the verdict.

II. The judge committed no error in his charge to the jury, or in his refusal to charge as requested by the defendant's counsel. I submit that the charge is sustained in every particular by authority. The representations complained of were not in respect to matters which were latent or concealed, but in respect to matters that might be known, and which were assumed to be known by the defendant, and were unknown to the plaintiffs, because the plaintiffs were not present when the boat was built, and had never seen the boat, and had no opportunity to inspect the boat at the time of the sale. If the defendant

did not know when, how, or of what materials, the boat was built, he should not have made the representations that he did, and for the purpose for which he made them. The effect of the representations upon the plaintiffs was just the same, whether the defendant knew they were false or not. I submit that the charge is sustained both by principle and authority; and if the express charge was right, the refusal to charge as requested by the counsel was also correct. (*See Bennett* v. *Judson*, 21 *N. Y. Rep.* 238.) It seems to me that the case cited is on all-fours with this at bar, and that the doctrine of that case sustains the charge in this, in every particular. The principle that "he who affirms either what he does not know to be true, or knows to be false, to another's prejudice and his own gain, must answer in damages," especially when the representations are of the character supposed by his honor, has been often affirmed. (*See Stone* v. *Denny*, 4 *Metc.* 160–162; also *Story on Cont.* § 506.) The case of *Binnard* v. *Spring* (42 *Barb.* 470) is entirely different from the one at bar, and is not at all inconsistent with the charge in this case. (*See* 4 *B. Mon.* 601; 1 *Wood. & Min.* 353.)

*A. Perry*, for the defendant. I. The portion of the charge excepted to by the defendant was erroneous, and the court also erred in refusing to charge as requested by the defendant's counsel. In view of the circumstances of this case, the charge and refusal amounted to an instruction to the jury that the plaintiffs might recover, notwithstanding they should find that the defendant, in making the representations, acted with entire honesty and in good faith. It is insisted that such is not the law. 1. To maintain an action for deceit by means of false representations, it has always been held necessary to aver and prove an intent to deceive. (*Thom* v. *Bigland*, 20 *Eng. Law and Eq.* 467. *Omrod* v. *Huth*, 14 *Mees. & Welsb.* 652. *Freeman* v. *Baker*, 5 *Barn. & Ad.* 797. *Stone* v. *Denny*,

4 *Metc.* 151.    *White* v. *Merritt,* 3 *Seld.* 352.    *Craig* v. *Ward,* 36 *Barb.* 377.    *Zabriskie* v. *Smith,* 3 *Kern.* 322.    *Bennett* v. *Judson,* 21 *N. Y. Rep.* 238.    *Binnard* v. *Spring,* 42 *Barb.* 470.    *Wakeman* v. *Dalley,* 44 *id.* 498.)    (*a.*) If the representation is shown to be false to the knowledge of the party making it, that is generally conclusive evidence of fraudulent intent.    (*b.*) So if it be shown that the representation was false, and that the party making it had no knowledge on the subject, that would also be evidence of a fraudulent intent.    A party who makes a statement as to the truth of which he is in entire ignorance, is as guilty of falsehood as one who makes a statement which he knows to be untrue.    So if a man swears to a particular fact without knowing at the time whether it be true or false, it is as much perjury, and equally indictable as though he knew it to be false.    (*Lawrence, J., in Rex* v. *Mawbey,* 6 *T. R.* 637.) Upon this principle the case of *Bennett* v. *Judson* (21 *N. Y. Rep.* 238) was decided.    In delivering the opinion, Judge Comstock quotes with approbation the language of Story, as follows :    "Whether a party misrepresenting a material fact know it to be false, or make the assertion without knowing whether it were true or false, is wholly immaterial ; for the affirmation of what one does not know or believe to be true, is equally, in morals and law, as unjustifiable as the affirmation of what is known to be positively false."    (1 *Story's Eq.* § 193.)    Judge Comstock adds : "In the case before us the representations of the defendants' agent were proved to be grossly false, and they could not be honestly made when he had not the slightest knowledge of the subject to which they related."    2. The action for deceit cannot be maintained when it is shown that the party making the representation actually believed it to be true at the time, although it turned out to be false in fact. Such representation is not unjustifiable, either in morals or law, and furnishes no ground for an action like this. (*a.*) All writers upon ethics agree that such a statement is

not a falsehood. It is a physical untruth, but has none of
the moral qualities of a lie. (*b.*) Such representation is
not a fraud in law. The language of Story, above quoted,
is "the affirmation of what one does not know or believe
to be true, is equally, in morals and law, as unjustifiable,"
&c. Parsons says: "If a statement be false in fact, and in-
jurious because false, if it were believed to be true by the
party making it, it is not a fraud on his part." (2 *Parsons
on Cont.* 774, 5th ed.) Chitty says: "It would now appear
to be settled, notwithstanding some decisions to the con-
trary, that legal without moral fraud, that is, that a state-
ment false in fact, but not so to the knowledge of the
party making it, and not made with intent to deceive, will
not invalidate a contract. But if a party, for a fraudulent
purpose, states a fact which is untrue, and without know-
ing it to be untrue, he does not at the time believe it to
be true, this is both a legal and a moral fraud." (*Chitty
on Cont.* 589, 8th Am. ed. *Omrod* v. *Huth,* 14 *Mees & Welsb.*
652.) This was trespass on the case for deceit in the sale
of cotton, by sample, upon a representation that the bulk
corresponded with the sample. The bulk turned out to
be of inferior quality, and to have been falsely packed,
though not by the seller. The court charged the jury that
unless they could see grounds for inferring that the de-
fendants or their brokers were acquainted with the fraud
that had been practiced in the packing, or had acted in
the transaction against good faith or with some fraudulent
purpose, the defendants were entitled to a verdict. They
had a verdict, and on writ of error the judgment was
affirmed. The court say: "The rule which is to be de-
rived from all the cases, appears to us to be, that where
upon the sale of the goods the purchaser is satisfied with-
out requiring a warranty, (which is a matter for his own
consideration,) he cannot recover upon a mere representa-
tion of the quality by the seller, unless he can show that
the representation was bottomed in fraud. If, indeed, the

representation was false to the knowledge of the party making it, this would, in general, be conclusive evidence of fraud; but if the representation was honestly made, and believed at the time to be true by the party making it, though not true in point of fact, we think this does not amount to fraud in law, but that the rule of *caveat emptor* applies, and the representation itself does not furnish a ground of action." (*Taylor* v. *Ashton,* 11 *Mees. & Welsb.* 401.) In this case Parke, B., said, in the course of the argument, "I adhere to the doctrine that an action for deceit will not lie without proof of moral fraud. If the party *bona fide* believes the representation he made to be true, though he may not know it, it is not actionable." (*Id.* 413.) *Moens* v. *Heyworth* (10 *Mees. & Welsb.* 155) was an action for deceit in the sale of coffee, in which the sellers exhibited an invoice which stated the coffee to be of " first shipping quality," which was false. Lord Abinger said : " The fraud which vitiates a contract and gives the party the right to recover, does not, in all cases, necessarily imply moral turpitude. There may be a misrepresentation as to the facts stated in the contract, all the circumstances in which the party may believe to be true." To sustain this view, he referred to the rule in cases of policies of insurance, as if the same rule applied to the case before him. But Parke, B., who delivered the prevailing opinion, said : " The case of a policy of insurance does not appear to me to be analogous to the present. Those instruments are made upon an implied contract between the parties, that everything material known to the assured should be disclosed by them. That is the basis on which the contract proceeds." He adds : " To give a right of action for the representation, it was, I think, essential to prove that, by words or acts of the defendants or their agents, it was made falsely and for the improper purpose of inducing the plaintiffs to purchase the goods. I think it essential that there should be a moral fraud, and indeed all the cases

show that it is." *Stone* v. *Denny* (4 *Metc.* 151) was an action
on the case for deceit, charging that on a sale to the plain-
tiff of an undivided half of the stock and property of a
woolen factory, a schedule exhibited by the defendant was
false, but was represented by him to be true and correct.
The head note is: "Though a representation made by a
vendor respecting goods sold by him be not true in fact,
yet if he believe it to be true, it is not a ground of action
by the vendee against him for fraud in the sale." *Hubbard*
v. *Briggs* (31 *N. Y. Rep.* 518) was an action on the case for
alleged fraud in making false representations concerning
the solvency of the Millers' Bank of Clyde, whereby the
plaintiff was induced to subscribe $5300 to the stock of
the bank, and give his bond and mortgage for the amount.
The defendant was a stockholder and director, from the or-
ganization to the failure of the bank, and by express agree-
ment was individually liable for its debts to a large amount.
Wright, J., in delivering the opinion of the court, says :
"If the defendant ignorantly asserted a lie in his effort to
induce the plaintiff to become a subscriber to the stock of
the bank, and honestly believed that its condition was as he
represented it to be, he would not have been liable." (*Id.*
530.) In *Craig* v. *Ward*, (36 *Barb.* 377,) the court charged
the jury that if the representations made to the plaintiff
were untrue, although the defendant did not know they
were so, yet if he was informed and knew of facts which,
in the exercise of common sense and ordinary prudence,
were sufficient to put him upon inquiry, and would have
led him to a knowledge of the condition of the title,
he would be liable, the same as if he had actual knowl-
edge.    The court held an exception to this part of the
charge not well taken.    They say: "It (the exception)
does not involve the proposition of his liability, in case he
actually believed the representations to be true at the time.
It carefully excludes that fact, and only raises the question
as to whether a party making a representation false in

Weed *v.* Case.

fact, should actually know it to be so, to render himself liable in an action for fraud. (*Id.* 385. *See also Haycraft* v. *Creasy,* 2 *East,* 92 ; *Tryon* v. *Whitmarsh,* 1 *Metc.* 1 ; *Russell* v. *Clark,* 7 *Cranch,* 69 ; *Lord* v. *Goddard,* 13 *How. S. C. Rep.* 198.) 3. There was abundant evidence in the case tending to show that the defendant believed, and had reason to believe, that the representations made by him were true ; and from the cases above cited it seems clear that the question, whether he did so believe or not, should have been submitted to the jury. 4. The charge of the court in this case cannot be sustained upon the doctrine that a party who makes a representation, alleging it to be true of his own knowledge, which is false in fact, is to be deemed guilty of fraud, whether he knew it to be untrue or not. (*a.*) This rule applies only to cases in which the subject of the representation is one of which absolute and accurate knowledge may be predicated, and not to those in which the subject of the representation is more or less matter of opinion. The rule that a false representation made by a party who is entirely ignorant on the subject is deemed fraudulent, applies equally to matters of fact and of opinion. To illustrate : A man represents a horse to be sound, (more or less a matter of opinion,) which he has never seen or examined. The horse is in fact unsound. It is fraud. If, however, he has used and examined the horse and really believes him to be sound, he is not guilty of fraud, though the horse be in fact unsound. On the other hand, if he affirms that he knows the horse to be but five years old, (a fact of which accurate and positive knowledge is predicable,) and the horse is ten years old, it is fraud, although he may have examined the horse and might have ascertained his true age ; for he affirmed that he had knowledge when he was aware that he had no such knowledge. But if he affirmed that he knew the horse to be sound and the horse was

unsound, from a secret defect which from examination and use of the animal he had been unable to discover, and the party really believed the horse to be sound, he is not guilty of fraud. His affirmation is deemed but a strong expression of opinion, and must have been so understood by the purchaser. The adjudged cases recognize these distinctions. (*Hazard* v. *Irwin*, 18 *Pick*. 95. *Stone* v. *Dewey*, 4 *Metc*. 151; and see on pages 156, 7, the comments of Judge Dewey upon the case of *Hazard* v. *Irwin*. *Thomas* v. *McCann*, 4 *B. Munroe*, 601. *Haycraft* v. *Creasy*, 2 *East*, 92. *Tryon* v. *Whitmarsh*, 1 *Metc*. 1.) (*b*.) The representations alleged to have been made by the defendant in this case were all very general, relating to matters of opinion, as to which honest men possessing equal information might well differ, with the exception of that in regard to the hatches. The defendant denies that he represented the hatches to be flat, and whether the jury believed him or the plaintiffs is uncertain. At any rate, the difference claimed between the value of flat and roof hatches was only $75. Whether or not a canal boat is "nice" or "good" or "well built," or built of "good materials," whether or not she is "finished up complete," and whether or not the timber is "seasoned," are, all, to some extent, matters of opinion, involving many degrees of variation, in respect of which men may honestly differ. The same is true of the question whether or not the boat was "summer built." Was the defendant to be understood as affirming that she was wholly built and launched during the three summer months, or did he use the term in the sense in which builders and dealers use it, i. e., as distinguishing from a boat built in winter? It would seem that Weed understood it in the latter sense, (see his testimony;) and if so, the representation was strictly true. (*c*.) The court did not submit to the jury the question whether or not the defendant made the representations as of his own

Weed *v.* Case.

knowledge. That should have been done, at least. (*Hazard* v. *Irwin*, 18 *Pick.* 95. *Stone* v. *Denny*, 4 *Metc.* 151, *and other cases cited under 1st sub. of 4th point.*)

II. The verdict should be set aside and a new trial granted.

*By the Court,* BACON, P. J. This action is founded on an allegation of deceit in the sale of a canal boat. The express averment of the complaint is, that the defendant, intending to deceive and defraud the plaintiffs, falsely and fraudulently made certain representations in respect to the quality and condition of the boat, in which the plaintiffs confided, and were thereby induced to make the purchase; and that these representations were false, and the defendant knew them to be so. The evidence on the trial was given with a view to sustain these allegations, and damages were claimed for the fraud thus charged to have been perpetrated upon the plaintiffs.

The rules of law applicable to an action seeking to recover damages for fraud and deceit in sales of property, have been long settled, and are very familiar to the courts. In the celebrated pioneer case of *Pasley* v. *Freeman* (3 *T. R.* 51) it was held that a false affirmation made by a defendant, with intent to defraud the plaintiff, whereby the plaintiff receives damage, is the ground of an action on the case in the nature of deceit; the principle being that fraud and deceit, accompanied by damage, is a good cause of action. This case has been uniformly followed by the courts in England and in this country, and, as Judge Wright says, in his opinion in the case of *Hubbard* v. *Briggs*, (31 *N. Y. Rep.* 529,) it is not controverted, now, that where a person asserts a falsehood with a fraudulent design, and damage results therefrom, though he may have no interest even in the deception, it is good ground for a civil action. Intentional and purposed deception is consequently the very gist of this action, and this must in

some way be made to appear, or no legal claim for damages is laid.

In closing his charge in this case, it seems to me the learned judge lost sight of this principle; for he told the jury that in this action it was not essential to prove any criminal, that is, wrong intent; that it was enough that the representations were untrue, whether known to be so or not. He was then asked to charge this specific proposition: "If the jury find that the defendant really believed that the representations made by him in regard to the boat were true, their verdict should be for the defendant." This direction was refused, and the defendant's counsel excepted. I think in this refusal the judge erred. This is not like the case of *Bennett* v. *Judson,* (21 *N. Y. Rep.* 238,) which the plaintiffs' counsel supposes to cover and sustain this charge. That case has always been considered to have carried the doctrine of liability for an alleged fraudulent representation to the extremest verge of the law, and the courts have been very careful to discriminate and apply it only to the state of facts presented by the case itself.

In that case the representations were made in regard to the quality and condition of property which the defendant, or rather his agent, who made the representations, had never seen, and personally had no knowledge of whatever; and in reference to that case, Judge Comstock, citing a passage from *Story's Equity Jurisprudence,* held that if a party make an assertion without knowing it to be true, he is as responsible as if he made the assertion knowing it to be false. The liability was made to attach to one who undertook to assert as a fact a thing of which he had no knowledge whatever, and in respect to which he could not have even a belief; for he had no material on which a belief could be founded, and there was no room for a claim that, although mistaken, he still may have acted in good faith. The statements on which the

purchaser relied were made in respect to what the party making them assumed to know, not what he had heard, or had reasonable ground to believe. In the same passage, quoted by Judge Comstock, occurs this important qualification: "for the affirmation of what one does not know, *or believe to be true*, is equally, in morals and in law, as unjustifiable as the affirmation of what is known to be positively false." This is a very important distinction, and is always to be kept in view in cases of this character, where a fraudulent intent is charged.

If a party has knowledge of the character and condition of the property with which he is dealing, and makes a representation which turns out to be false, the motive with which that representation is made is all-important when he is sought to be made responsible on the ground that he perpetrated a fraud; and the fact whether he really believed, or had any justifiable reason for believing that what he said was true, is a most legitimate subject of investigation, and upon that, as in all those cases of imputed fraud, where the motive is the subject of inquiry, the party charged with the fraudulent intent is permitted to be heard. The inquiry which the proposed instruction invited, whether the defendant really believed that the representations he made were true, was one entirely competent, as bearing legitimately and directly upon the fraudulent intent charged. The jury may not have credited the claim thus sought to be made on the part of the defendant; nevertheless, as matter of evidence, it was competent, and the defendant was entitled to have their judgment upon the question of his good faith, which was the essential issue in the case.

I do not think it important to go through the cases, a large number of which have been cited by the defendant's counsel to sustain his view. The principle is asserted in a variety of forms; that principle being that in order to

maintain an action for deceit by means of false representations, it is always necessary to aver and prove an intent to deceive; and that whenever a party actually believes what he asserts to be true, he is not liable, although it turns out that what he affirmed was false, in fact. This is clearly and pointedly expressed by Wright, J., in the case of *Hubbard* v. *Briggs*, cited *supra:* "If the defendant ignorantly asserted a lie in his effort to induce the defendant to become a subscriber to the stock of the bank, and *honestly believed* that its condition was as he represented it to be, he would not have been liable." So in *Stone* v. *Denny*, (4 *Metc.* 151,) the court held that though a representation made by a vendor respecting goods sold by him be not true in fact, yet if he believe it to be true, it is not a ground of action by the vendee against him for fraud in the sale. Without a further citation of cases, many of which will be found in the English reports to the same effect, I am in favor, for the error in refusing the instruction asked, of granting a new trial, with costs to abide the event.

MULLIN, J., dissented.

New trial granted.

[ONONDAGA GENERAL TERM, January 5, 1869. *Bacon, Foster, Mullin* and *Morgan,* Justices.]